May it please the Court, Cal Potter, Las Vegas, and Travis Berrick, also of Las Vegas, on behalf of John Witherow, who is also present. The case was tried in Reno, Nevada, before Judge Clive Jones. Knowing that the Court is familiar with the facts of this case, I wanted to address why the Court erred, and then I'm going to split my time with Mr. Berrick, and he's going to deal with the issues dealing with the motions to dismiss and the summary judgment. The first issue here that where the Court erred is dealing with the magistrate's finding pursuant to the Von Poisec or Pike, Von Pike case, where the analysis was done assuming that these telephone calls were in the ordinary course of business, when in fact the footnote at number 9 in the Van Poit case specifically says that this analysis does not apply to properly placed telephone calls between a defendant and his attorney, which the, in that instance, it's the Metropolitan Correctional Center, does not record or monitor. In this particular instance, in this set of facts, there were statutory guidelines dealing with how an inmate would go forward and register for confidential communications with their attorneys. And in this particular instance, Mr. Witherow had three attorneys, Don Evans, Bob Hager, and Mark Picker. They were all registered with the Department of Corrections as his attorneys, and therefore the communications were confidential. Indeed, what was occurring was there was supposed to be a statutory scheme and an administrative regulations governing the fact that if you have attorneys that have been registered and the Court would then, should have been looking at the fact that they had registered these attorneys under the provisions of the administrative guidelines as well as what was supposed to be followed in the Nevada Revised Statutes 209.419. And indeed, if in fact they are registered, the correctional officer is supposed to take the phone to the individual, which they do. In any case, this was a cordless phone, but they are supposed to actually place the call, then make the determination that it's to the registered law firm. And what occurred here is we had eavesdropping by two of the correctional officers that went to trial on the case Baker v. Connolly, and the Court looked at an exception that they were saying was created based upon ordinary business, that it was done in the interest of law enforcement, that it was a mistake of law made by the law firm. Kagan. Help me understand the context in which you're making this argument. What's the point I'm supposed to take away from this? Are we talking about whether this is a law enforcement activity within the meaning of the Wiretap Act, or are we talking about something else? No. We're talking about it within the context of the Wiretap Act. Okay. And so what occurred here is that you had, according to the Court, an exception, the ordinary business of law enforcement. This was not in the ordinary business of law enforcement. I guess your argument then is that the officers, correctional officers, were doing this, listening in at the beginning and listening in in the middle, were not authorized to do that. Are you saying that it was contrary? Were they doing something that they were not supposed to do? Or are you saying that simply there was no affirmative authorization? There was no affirmative authorization, but they were also in violation of the statute. So what statutory language are they in violation of? The 209-419 deals with the director is supposed to adopt provisions for alternate methods for confidential communications with the attorney, and the 209-419-4D inmates' communications with the attorney are confidential. And so what you had here was, in the course of the trial, Ms. Baker admitted that she was not only doing the initial, and they weren't placing the phone calls, but they were eavesdropping, but in fact she was also going on in the middle of the calls to determine whether they were still legal calls. That isn't what the statute, that isn't the expectation of privacy, which will be discussed. I'm sorry, I'm just working my way through. So what's the statute that they're violating? 209.419-4D. 4D, okay. Except as otherwise authorized, a communication made by an offender is confidential if it's made to an attorney who's been admitted to practice law, da-da-da. You're saying that they're violating that? Yes. And what they're trying to say is there's a lot, what the court tried to say was there was a law enforcement exception. But the law enforcement exception of what they monitor are calls between lay people, other inmates. Well, but I'm trying to figure out why this forbids what the correctional officers say they're doing. Now, they may or may not be telling the truth, but I'm taking it for the moment that they're truthfully speaking, that they are listening in only to the extent necessary to determine that this is a call to an attorney. Once they determine that, they're done. Right. So why does that violate this statute? Because what is supposed to occur in 209.419-3 is that you set up a situation where, so you're not monitoring. They weren't trained. They don't know. They testified at trial. They didn't know what legal terms were. They just kind of used a gut reaction in doing it. So what they're doing is they're listening to all the telephone calls of the attorney and the client. And so it's a situation. Well, you say listening to all the calls. You don't mean listening to the entire call. You mean they're listening into each call in order to determine? No, we believe that they were listening to all the calls and what had occurred is misdemeanor. But that question, that's disputed is whether they're doing that. It is disputed, Your Honor. And what they were trying to do is kind of like a minimization on a wiretap. But it isn't a minimization because there were specific items that were brought forward that they should do. Now, did the question as to the extent of their listening in, did that go to trial? It did. And your client lost at trial. He did. What am I supposed to conclude from that? Well, because what happened was the court gave the wrong instructions dealing with this ordinary business exception. And it also, when Baker, Officer Baker admitted that she was not only doing it at the very beginning, but she would also go in at a different time, he created another exception within the exception, saying that, well, you have a right also to monitor to make sure that they're legal. Well, but can we conclude from the jury verdict against your client that the jury believed the officer testimony, that they were listening in at the beginning and in the middle only to determine whether this was a legal conversation rather than the contention on your side that they were listening to the whole thing? Can we conclude that the jury believed the testimony of the officers on this point? I think you could infer that. Our argument is they were instructed incorrectly, and that isn't the real basis for the act. It isn't an ordinary business exception. So you're so I want to apologize, but I'm split in time. Oh, yeah. I'm into his time. To please the Court, Travis Beric for the appellant, Mr. Witherow. The district court erred in granting the motion to dismiss, this is count A in the appeal brief, based on the mere presence of a contract citing the Rendell case. And we know, everybody knows that the mere presence of a contract does not convert private actors into state actors. But the Rendell case was not the right case to suit. That was an employment case, you know, and they were trying to force private action from the government down to Are you talking about the telecommunications company? No, I'm talking about the dismissal of the phone companies. That's what I'm talking about. Yes. Oh, okay. So the better Yeah, you're talking about the part A to the dismissal of the phone companies. Why were they dismissed? Well, the Court improperly relied on the Rendell case. Hardly a good case. But what is the sufficient connection to color of law here? Well, we can get to that, Your Honor. And I think the better case is the Cornish case, which we put in our supplemental authorities. It is a Fifth Circuit case, but it says the issue is not whether the defendant was under a contract, but was they acting under State law when they performed under that contract. But what did the private companies do that was wrong? Well, we don't know because the Court closed discovery. We never got a copy of the contract. No, no. What did they do? Not what the contract says. Oh, I'm sorry, Your Honor. What was the allegation as to what the private companies did? The phone companies set up a system that empowered, knowingly empowered, the defendants to illegally monitor Mr. Withrow's calls. What is the evidence that they knew that the police officers were monitoring, were eavesdropping on the calls? Well, exactly. Allegedly improperly. What did they, how did they know that the DOC here was, you know, allegedly improperly listening in on the calls? Your Honor, exactly. We don't know exactly how they knew. We know they set up the system that allowed for this monitoring, right? But if I sell a car that allows somebody to drive 100 miles an hour, I'm not liable when the person drives 100 miles an hour. Exactly. So why are the telephone companies liable? Because they set up a system that allows the correctional officers to engage in a violation, assuming for the purpose of my question it's a violation. But I don't see how the private companies can be liable for something that somebody else does that's illegal. Well, Your Honor, the Hobbs case is, if you allege a conspiracy that they knew going in that they were going to set up this system, you should be able to survive a Motion 12b-6. And again, we don't have the terms of the contract. There could have been parallel recording systems that, even though ICS said they didn't record the calls, there might have been a parallel system that allowed the defendants to record the calls. So our position is that the phone companies were improperly dismissed at the outset because the court foreclosed discovery on the contract. But you never allege that they acted willfully with respect to this joint action with the State. I understand the difficulties of that. But the, if I may, the Sal case out of the, out of this circuit says, thank you, the joint action tests whether State officials acted in concert affecting a particular deprivation of constitutional rights. That's Sal 1139. If the State knowingly accepts the benefits derived from unconstitutional behavior, then the conduct can be construed a State action. We understand the thinness of this claim. Our position is the court improperly dismissed the phone companies at the outset. But you still haven't alleged the willful participation by the phone companies in this joint. You just talked about the State action. But it's not clear to me how or, you know, you have alleged that. I understand. And there's a difficult case for us in this circuit called the Arnold v. IBM, where the plaintiff sued IBM, tried to get them under State action, and the court said, nah, just because they provided information of the basis of a certain seizure. We can distinguish Arnold because that's not a single act. This is a procedure that they put in place and negotiated at the outset. We're going to create this system that allows the defendants to illegally monitor attorney-client calls. Now, it might have gone missed. But the whole point was once a number was registered with the system, and all three of these attorneys' phone numbers were registered in the system, then no monitoring or recording should have been able to take place. But they set up a system precisely to allow that to happen, to register telephone numbers. How's that? So the thing I find most troubling is not the dismissal of the telephone companies. It's the granting summary judgment on the constitutional claims because he didn't have, Witherow didn't have a subjective expectation of privacy. I don't see that the law requires a subjective expectation of privacy. That's, to me, that's perhaps your strongest argument. If I may, Your Honor, I'd like to address that. Yeah. Some arguments are so dumb, they're hard to refute. And so the State comes in and says Mr. Witherow consented to the monitoring and recording of his calls. The way to unwind that is consent has to be knowing and intelligent. And the notice has to be given prior to the act, even if it's an inferred consent. So there's lots of inferred consent cases on telephone cases, but there's no such thing as inferred notice. And so all along, the defendants were telling Mr. Witherow, your calls are not supposed to be recorded, that's in the regs, it's in the law. Were they recorded or were they just listened to? Well, we don't know if they were recorded. We know they were listened to. The case law is about recording, so it is listening. So we know they were listening. Thank you. Well, the district court found that Mr. Witherow had actual subjective, the expectation of privacy that he needed to have, that you needed to show that he didn't have an actual subjective expectation of privacy in the place searched. I think I got that. That was clear. But he knew that he was being recorded. No, he doesn't know that he's being monitored. He suspects they try some attempts to get to bait the officers into responding, but there's no way for him to know that they're actually monitoring his calls. He suspects. So they're inferring that he knew that they were monitoring his calls, but he suspects it. That's not the same thing. That's not the basis of waiver. Well, let's assume that it is. I'm out of time. No? Well, let's answer that question. Let's assume that it is sufficient. Do you agree that that's sufficient? Not at all, Your Honor. Why? Because the attorney-client privilege is different than a simple telephone call to somebody on the outside. So this man is entitled to speak with his attorneys freely for the purposes of the attorney-client privilege. So if he suspects they're monitoring his calls, but he doesn't know, I don't see how they can give the rise to consent, certainly without the expressness. Consent. But it seems like we have pretty well-settled law that for an individual to seek Fourth Amendment protection, the individual must have an actual subjective expectation of privacy in the place search. But where an individual's subjective expectation of privacy is diminished by the unreasonable actions of the government, the individual may nonetheless state a Fourth Amendment claim. And I just would like for you to talk about that, because you really don't talk about it in the briefs. Understood. I think as you were reading the case law, I'm going yippee-i-yay, because you just nailed it for us. Well, I nailed it for you. You didn't nail it for yourself. For which I'm grateful, Your Honor. Well, but you didn't raise that. But I want to play this through. I want to find out what the right result should be here. And so please address that. Well, I think that's a good question. I think the second half of that was if his reasonable or subjective understanding of his privacy is diminished by the illegal acts of the defendants, he can still raise a Fourth Amendment claim. And I think that's exactly what happened here. Mr. Witherow had the entitlement to make these calls. But do you agree that he lacked a subjective expectation of privacy in his calls? Not at all, Your Honor. I can't concede that point, because he had no way of knowing when they were listening to his calls. His only option was to not use the phone. That's what they let him do. So you deny here on appeal that he denied that he was not aware that the calls were being monitored? Your Honor, that's not what I said. What I said was he didn't know which calls were being monitored. Well, was he aware that the calls were being monitored? Aware of the potential. And I think that's the fundamental difference, right? Well, so he's aware, then, if subjective knowledge is enough to defeat the claim, if he's aware of the possibility of their being monitored, the claim is defeated. I'm not sure that's enough to defeat the claim, because it's possible that the prison does not have the right to monitor the calls, period, whether he's subjectually aware of it or not. That is to say, if it's protected attorney-client privilege, whether he knows it or not. I mean, they're violating his attorney-client privilege. So that's the question. It is a question. And again, they keep... Then the next question is, is it a legitimate penological interest for them to do this? Because we all know that rights that are of a certain form outside a prison take a different form inside a prison if there's a legitimate penological interest in doing what the prison is doing. And as I understand it, the prison is saying, this is the way in which we need to act if we're going to ensure that the prisoners are not abusing the system, and in fact, pretending that they're calling their lawyer, but in fact, they're calling their friend, their wife, their colleague, whatever. So that's the next question, and you don't brief them. Well, the district court never got there, right? I don't think... The district court did not make a finding on that when it rolled in the summary judgment motion. That's the second part of my problem. Maybe you should sit down, because you're over your time, and maybe the other side can answer some of these questions for us. Thank you. Good morning, Your Honors. May it please the Court, my name is Clark Leslie. I'm from the Office of the Attorney General in Nevada. I will speak to the issues involving the phone privileges and the alleged monitoring that was occurring. My colleagues, three of them, will be appearing on behalf of the telephone vendors and may discuss the motion to amend that was finally denied. Your Honors, allow me, if I can, please, to set the stage for the situation that Mr. Witherow was in when he was in prison during the years 2007 and 2008, when the 111 conversations were supposedly listened into. As you'll recall from reading the briefs, he had asked for protection and was placed into administrative segregation for that purpose. As we mentioned in our briefs and was uncontested, in Unit 13, the administrative segregation does not have a separate phone per se. Instead, a portable telephone would have to be brought to the inmates. In this case, that was done for Mr. Witherow. Beyond that, we know very little, because Mr. Evans, the attorney, ended up playing games with discovery and finally was sanctioned and disallowed from presenting any evidence, because after a year of song and dance, we discovered he claimed that he didn't have any records for the years, the period May 8th of 2007 to August 8th of 2009, I believe it was. So after juggling around for some period of time, he ended up stating, I don't have any records. The other matter that's important is this. There is a statute that is federal in nature, the Omnibus Crime Control and Safe Streets Act, and there are state statutes that provide and allow for privileges and for confidentiality. We recognize that. We acknowledge that. In glossing over what the statutes state, what my honorable opponent says about the errors that arose in instructing the jury simply wasn't true. You have a statute that basically says individuals should be protected from having their conversations surveilled by electronic devices. And then we have an exception to that statute. It says that if you were in the ordinary course and scope of your job as a law enforcement person, you may be used devices for purposes of listening in. But then, as Judge Jones correctly instructed the jury, there is an exception to that exception, and that is, if there is an attorney-client conversation that is transpiring between two or more individuals, that disallows law enforcement from using devices to listen in. But, and this is important, the record showed, and it established, and I'm here to defend the jury's verdict, which this jury worked very hard, they heard evidence that there were substantial abuses. And as you pointed out, Judge Fletcher, there is a legitimate penological interest that can be raised and posed. I didn't point that out. I asked the question. Thank you, Your Honor. You asked the question, and it is correct that there is a legitimate penological interest under Turner in many cases that you've heard many times that allows or can provide for an explanation and support for a prison regulation. The jury heard substantial evidence about the difficulties in accommodating all inmates who wish to use a telephone. So the district court never made a determination on that, though, right, on the penological interest? That is correct, Your Honor. They did rule at various points through the various dispositive motions that a legitimate penological interest would be relevant to certain determinations of law, in fact, in the course of the case going to trial. But was the only thing that went to trial was the wiretap claim? In the final analysis, yes, Your Honor. So the Fourth Amendment claim was dismissed on summary judgment? That is correct, Your Honor. And it was dismissed by the district judge on the ground that he had no subjective expectation of privacy? That and also the magistrate, which is supported by the district court, also ruled that the protections for the Fourth Amendment would be by a search warrant rather than through the mechanism that they were seeking. So what if I conclude that they're wrong on that point and that legitimate expectation is not merely subjective but rather it's a matter of law and the only way that this can be done consistent with the Fourth Amendment is that there is some legitimate penological purpose for it? Because he didn't get to that, the judge did not reach that question because he dismissed it on the ground that, well, you knew, you had a subjective expectation. Very well, Your Honor. Then the argument, the fallback argument would be that there was a legitimate penological interest. So how do we know that? Because we established in the record, number one, that there had been significant abuses and that it was necessary to determine so that all inmates would have access to telephones that the telephones that were allegedly being used for conversations with their attorneys, in fact, were doing so. Yeah, but let me ask you this. The district judge made no finding on this question. It immediately occurs to one in response to what you're saying, well, weren't there other methods that would be less intrusive? For example, instead of having the guards doing the monitoring, having a private company doing the monitoring, not merely for the people outside of ADSEG, but even in this unit, Unit 3. Now, I don't know what the answer to that is, but this was not developed in the district court, and I think the district court ought to decide it instead of us. How do you respond to that? Well, the question was never even raised. The argument was never suggested that a third party other than the prison should do this monitoring. I understand it wasn't raised. It's because the district judge pre-dermits it by saying if you have a subjective knowledge that you're going to be, or at least the possibility of wiretapping, you're done. But that's wrong. Could be wrong. I mean, potentially it could be wrong, or it is wrong. But if it is wrong, then a determination needs to be made on whether or not there's sufficient penological interest. And should we be the one deciding that, or should the district court? First, with respect, Judge, we believe that a subjective expectation of privacy is essential to being able to make that point. Secondly, what I... So you can interfere with attorney-client privilege listening in all day long, so long as he knows you're listening? No, Your Honor, that's not what I said. Well, it is what you said. Well, what I was developing as an argument before you asked your first question was there is a necessity because of a legitimate penological interest to determine that the call truly is an attorney-client call. Right, and the regulations provide for that by... You can have your guard dial the number to make sure it's a legal office or an attorney, right? Mm-hmm. And I guess you have... Once you determine that it's a legal call, you're not supposed to listen further, right? Well, but the problem was, particularly in this case, with the Don Evans law firm, when the telephone call was placed from Mr Witherow to Mr Evans' office, there was insufficient evidence or conversation occurring which would allow the prison to determine that it was truly an attorney-client call. They didn't know, A, who was answering, B, whether it was Mr Evans or another attorney in the office that was actually going to take the call. And the prison is allowed to make inquiries, or in this case, listen in, until they determine that, yes, the attorney that is authorized by this telephone number to be representing Mr Witherow is the attorney that is now engaged in the telephone call. And we had expressed and shown instances where inmates would call, they couldn't get through the attorney, they would hang up quickly and then make another call to a non-attorney and abuse the process that way. Yeah, so why do you have to listen in? Why can't you just watch the guy? Watch the guy? Yeah, I mean, pushes the button, dials again. Oop, looks like you called somebody else. I suppose in a perfect world we could have... Not even perfect, you just watch the guy. In a perfect world, Your Honor, we could have and devote a correctional officer to take the time to stand and watch an inmate actually make the phone call. In the practicalities of the Nevada Department of Corrections, that is not always possible. Yet you have the time to actually sit around and eavesdrop on these calls? These individuals are not eavesdropping, Your Honor. They are sitting in the bubble and they have a speaker that in amongst their other duties... I don't understand. You say they don't have the time to observe, but they do have the time to listen in. They're in the bubble, Your Honor. They are performing one of several duties. It is the part of the tier where the correctional officers are sitting in a glass booth and they are watching the entire tier. And one of the things that the phone set up allowed was for a small speaker to be in the bubble. And while these correctional officers are also making sure that no one is causing a problem on the tier, they can also listen in, not watch, but listen in on what the conversation is. That all sounds like an interesting argument and it may be a good one, but it sounds like an argument that I'd be more comfortable, the district judge, taking evidence on. Well, the jury did hear the evidence on this. But you're saying the question that was in front of the jury. Yeah. The jury... I understand because I think they sometimes do overlap, whether or not the response by the DOC to the wiretap violation on whether it was in their ordinary course of their duties may overlap with penological interest. But that wasn't the question squarely in front of the jury and no one's really answered that. So you're trying to argue, which I understand, but I'm not sure that that is sufficient for purposes on appeal, that whatever came out of that, you know, the evidence that was developed from that and is in the record now, we can just apply to the penological interest. And I'm just not sure that we can do that. Well, what I can say with confidence is that very able counsel represented Mr. Witherow and that was explored maybe, if not in name, certainly by description. They heard everything about the speaker box, about the problems that they had engaged in with... They, meaning the jury? Yes. But they were not asked about whether this was legitimate penological interest. They were asking whether this violated the Wiretap Act. Well, the evidence before the jury was why it was necessary to engage in initial monitoring. And in the course of answering that question, the jury heard the legitimate penological interest. It may not have been labeled as such, but they were given the reasons why. At pages 447 of the third volume of the record, for example, Correctional Officer Baker testified at great length as to why it was necessary to engage in initial monitoring. And Correctional Officer Connolly at page 525 and thereafter also presented that evidence. Was it specifically presented to the jury in terms of legitimate penological interest? Probably not. Were the jury instructions sufficient to allow that penumbra of information to come in? Respectfully, I would offer yes, it was. Can we talk about the imposition of the sanctions order against Evans? Sure. Against Mr. Witherow during trial? Sure. We have two individuals here, a sophisticated inmate who has filed many lawsuits and a long-time attorney in Nevada. The attorney in Nevada, I'll be kind, played games with the discovery rules and after over a year didn't turn over or answer interrogatories or responses to requests for production properly. We asked for terminating sanctions. We didn't get them, and we were still disappointed about that. But he was restricted from basically discussing anything in the interrogatories to the director, Mr. Skolnick, and to the deputy director, Mr. Helling. What then happened was, although he did not take the stand as a witness-in-chief for himself... Wasn't he dismissed at that point? But at the point of the trial, he wasn't in the case anymore as a plaintiff. Well, that's correct. And so then what happened was there was an attempt to do an end run around the discovery sanction by calling him as a witness and testifying to what he had been prevented from testifying to or providing evidence for in his case-in-chief. But there are three important things that should be remembered in this regard. First of all, Mr. Witherow was allowed great latitude to discuss at length his position on what was said and done during these phone calls. He said they were attorney-client. He said he expected them to be privileged and confidential and so forth. And that's at 364 of the record. Secondly, the secretary or assistant in Mr. Evans' office was allowed to come forward and testify and she said, yeah, I thought they were talking about legal affairs and yes, they had commented that they thought they were being monitored. Also, this is being judged on the abuse of discretion standard and it would not be an abuse of discretion to limit an attempt to do and run around a discovery sanction. It would eviscerate the rule if you could prevent a party from gaining the advantage of playing hide-and-seek with evidence and then get it in through questioning rather than through the case-in-chief. My time is up. Thank you, Your Honors. Thank you very much. You have 17 seconds. Who wants to argue? Who's here who wants to argue? On behalf of the telecommunications? Who are you representing? Good morning, Your Honor. I'm Tyler Andrews. I represent Global Tellink, which is one of the three phone company defendants. I can briefly respond to the argument that the three phone company respondents were not acting under color of state law. There's no plausible set of facts that could demonstrate that the phone company defendants were acting under color of state law. I can tell you, you don't need to convince me of that. I don't know about my colleagues, but I don't think you need to spend much time on that. I'm okay on phone companies. It's sufficiently briefed. Thank you, Your Honors. Very effective 17 seconds. Yes, very effective. Six. Okay, was there a third person who had something to say on behalf of somebody over there? Unless you have questions, Your Honor, I don't. But who do you represent? I represent Embark. Okay. Questions? All right. Thank you very much. Evans v. Skolnick will be Oh, did you have their time left? I think so. Did they have time left? No, they were over. Okay, Evans v. Skolnick is submitted and this session of the court is adjourned for today. Thank you.
judges: Wardlaw, W. Fletcher, Murguia